UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES P. SNYDER,

<div style="margin-left:3em">Plaintiff,</div>

<div style="margin-left:2em">-against-.</div>

<div style="text-align:right">Civil Case No.:  7:16-cv-1462<br>(GTS/TWD)</div>

TOWN OF POTSDAM, MARIE REGAN, ROLLIN
BEATTIE, ROSE RIVEZZI, JAMES GRANT, JR.,
JUDITH RICH, MICHAEL ZAGROBELNY and
ANN CARVEL,

<div style="margin-left:3em">Defendants.</div>

<div style="text-align:center">

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

</div>

**LEMIRE, JOHNSON & HIGGINS, LLC**
**Attorneys for Defendant**
**2534 Route 9 – P.O. Box 2485**
**Malta, New York 12020**
**Tel:    518-899-5700**

**Gregg T. Johnson, Esq., of Counsel**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

STANDARD OF REVIEW .............................................................................................7

ARGUMENT...................................................................................................................8

POINT I   -   SOME OR ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED ..................9

POINT II  -   SOME OR ALL OF PLAINTIFF'S CLAIMS ARE PRECLUDED
              BY HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES .............10

POINT III -   PLAINTIFF ADMITS THAT HIS "HARASSMENT" CLAIM
              IS NOT COGNIZABLE UNDER TITLE VII.......................................................11

POINT IV -   PLAINTIFF'S DISCRIMINATION (DISPARATE TREATMENT)
              CLAIM(S) IS BASELESS..................................................................................13

POINT V  -   PLAINTIFF'S RETALIATION CLAIM IS TIME-BARRED
              AND BASELESS ...............................................................................................17

POINT VI -   PLAINTIFF HAS NOT, AND CANNOT, STATE
              A BREACH OF CONTRACT CLAIM ...............................................................20

CONCLUSION...............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alexander v. Westbury UFSD,*
  829 F.Supp. 2d 89 (E.D.N.Y. 2011) ...................................................13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)....................................................................7, 8

*Bentivegna v. People's United Bank,*
  2017 U.S. Dist. LEXIS 124319 (E.D.N.Y. 2017)..................................14

*Brooking v. New York Department of Taxation & Fin.,*
  2016 U.S. Dist. LEXIS 86457 (N.D.N.Y. 2016) ....................................9

*Burlington Northern & Santa Fe Ry. v. White,*
  548 U.S. 53 (2006).....................................................................19

*Byrne v. Telesector Res. Group, Inc.,*
  339 Fed. Appx. 13 (2d Cir. 2009).....................................................15

*Camarda v. Selover,*
  673 Fed. Appx. 26 (2d Cir. 2016).....................................................12

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)......................................................................7

*Chen v. Antel Communs, LLC,*
  2015 U.S. Dist. LEXIS 134861 (E.D.N.Y. 2015)..................................20

*Cobb v. Atria Senior Living, Inc.,*
  2018 U.S. Dist. LEXIS 13725 (Dist. Conn. 2018) ................................18

*Demoret v. Zegarelli,*
  451 F.3d 140 (2d Cir. 2006)............................................................19

*Dister v. Cont'l Group,*
  859 F.2d 1108 (2d Cir. 1988)............................................................7

*Farragher v City of Boca Raton,*
  524 U.S. 775 (1998).....................................................................13

*FDIC v. Giammettei,*
  34 F.3d 51 (2d Cir. 1994)................................................................7

*Forest v. N.Y. State Office of Mental Health,*
    672 Fed Appx. 42 (2d Cir. 2016) ...................................................................18, 19

*Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.,*
    975 F. Supp. 511 (S.D.N.Y. 1997) ...........................................................................8

*Harris v. New York State Dep't. of taxation,*
    2015 U.S. Dist. LEXIS 49900 (N.D.N.Y. 2015) ...................................................10

*Kerzer v. Kingly Mfg.,*
    156 F.3d 396 (2d Cir. 1998) .....................................................................................7

*King v. James,*
    2016 U.S. Dist. LEXIS 161308 (W.D.N.Y. 2016) .................................................15

*Lichtenstein v. Triarc Cos.,*
    2004 U.S. Dist. LEXIS 8610 (S.D.N.Y. 2004) ......................................................12

*Marshall v. Bldg. Maint. Corp.,*
    587 F.2d 567 (2d Cir. 1978) ...................................................................................15

*Matlook-Abdullah v. New York State Dep't of Labor,*
    2017 U.S. Dist. LEXIS 195763 (N.D.N.Y. 2017) .................................................11

*McCullough v. Xerox Corp.,*
    224 F. Supp. 3d 193 (W.D.N.Y. 2016) .............................................................14, 16

*McGuinness v. Lincoln Hall,*
    263 F.3d 49 (2d Cir. 2001) .....................................................................................13

*McNutt v. Nasca,*
    2013 U.S. Dist. LEXIS 7059 (N.D.N.Y. 2013) .....................................................16

*McPherson v. New York City Dep't. Of Educ.,*
    457 F.3d 211 (2d Cir. 2006) ...................................................................................12

*Milner v. HRA Police Department/Agency,*
    2018 U.S. Dist. LEXIS 52138 (S.D.N.Y 2018) .....................................................10

*Patroso v. Syracuse Cmty. Health Ctr.,*
    2014 U.S. Dist. LEXIS 111922 (N.D.N.Y. 2014) .................................................10

*Rumsey v. Northeast Health, Inc.,*
    89 F.Supp.3d 316 (N.D.N.Y. 2015) .......................................................................18

*Tenenbaum v. Williams,*
    193 F.3d 581 (2d Cir.1999) ......................................................................................7

iii

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999)..................................................................................7

*Whitt v. Kaleida Health*,
    2018 U.S. Dist. LEXIS 59974 (W.D.N.Y. 2018) ...............................................9, 14

**State Cases**

*ADC Contr. & Constr., Inc. v Town of Southampton*,
    45 A.D.3d 614, 850 NYS2d 121 (2007) ...............................................................22

*County of Rockland v. Orangetown*,
    189 A.D. 2d 1058 (3d Dept. 1993) ......................................................................21

*McCulloch v. Town of Milan Town Bd.*,
    92 A.D.3d 734 (N.Y. App. Div. 2012) ..................................................................22

*Mohl v Town of Riverhead*,
    62 A.D.3d 969, 880 NYS2d 313 (2009) ...............................................................22

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
    83 A.D. 3d 804 (2d Dept. 2011) .........................................................................20

**Federal Statutes**

42 U.S.C. § 2000e-5(e)(1).......................................................................................9

**State Statutes**

N.Y. Gen. Oblig. L. § 5-701(a) and (a)(1) ..............................................................21

N.Y. Real Property Tax Law ...................................................................................21

N.Y. Town Law .......................................................................................................21

N.Y. Town Law § 65 ...............................................................................................21

N.Y. Town Law § 65(3) ...........................................................................................21

**Rules**

Fed. R. Civ. P. 56(c) ...............................................................................................7

Fed. R. Civ. P. 56..................................................................................................1

L.R. 7.1 .................................................................................................................2

## PRELIMINARY STATEMENT

Defendant, the Town of Potsdam, by and through its attorneys (Lemire, Johnson & Higgins, LLC) submits this Memorandum of Law in support of its motion for complete summary judgment dismissing the Complaint (Dkt. 1) pursuant to Rule 56 of the FRCP.

This case involves "reverse gender discrimination" claim under Title VII advanced by Plaintiff after he voluntarily resigned his employment as the Assessor for the Town of Potsdam (hereinafter "Town") on April 9, 2017 (Ex. F). Plaintiff's *pro se* Complaint, advances three Title VII claims which he describes as: (1) "discriminatory behavior based on sex with regards to salary, additional wokhour (sic) pay, treatment of employees and healthcare benefits" (Dkt. No. 1 at 13); (2) a "breached …agreement that the plaintiff shall receive the same benefits as everyone else with the exception of longevity" (*Id.*); and (3) "failure to implement… workplace violence policy [or] … act on harassment claim". (Dkt. No. 1 at 14).

By stipulation that was "So Ordered" by this Court on March 10, 2017 (Dkt. No. 16), all claims against all individual Defendants were dismissed with prejudice. Accordingly, the Town is the only remaining Defendant. Plaintiff never served a Notice of Claim on the Town prior to commencing this action. Plaintiff did file a single administrative charge (jointly) with the EEOC and the New York State Division of Human Rights ("SDHR") on December 14, 2015 (Dkt. No. 1 p. 4; Exs. L, Q). Plaintiff's administrative charge was investigated and dismissed by the SDHR on June 20, 2016 and his Title VII claim was later dismissed by the EEOC on September 7, 2016 (Ex. L).

During the discovery period in this action, Plaintiff conducted no depositions, served no interrogatories, served no notices to admit and otherwise made no attempts to explore the motives by the Town decision-makers (Johnson Decl. ¶3). Accordingly, the record evidence before this

1

Court is largely undisputed and demonstrates that Plaintiff's claims are: time-barred; precluded by Plaintiff's failure to satisfy conditions precedent; legally infirm; and factually baseless. Accordingly, the Town seeks complete summary judgment dismissing the Complaint in this action.

## STATEMENT OF FACTS

Most of the material facts warranting summary judgment in Defendant's favor are set forth in Defendant's L.R. 7.1 Statement. In addition, for brevity's sake, there are a number of salient undisputed facts that warrant summary judgment in favor of the Town:

- The Town only had one Assessor position at all times Plaintiff was employed by the Town and therefore, no other Town employee performed the same work as Plaintiff (Beattie Aff. ¶7; Regan Aff. ¶13;

- Plaintiff was never given written job evaluations, disciplined or subjected to any adverse employment action by the Town;

- While the Town has two bargaining units of employees who are represented by the Teamsters, Plaintiff was never a member of the Teamsters or any other union while employed by the Town;

- Plaintiff negotiated his annual pay increases and benefits directly with the Town Supervisor and the Town Board each year and therefore, cannot compare himself to unionized Town employees;

- Each year Plaintiff was employed as the Town Assessor, he negotiated pay increases for himself that were higher than the rate increases received by the unionized Town Office staff;

- In both 2015 and 2016, Plaintiff was paid more by the Town than every single female Town employee, with the exception of the Town Clerk;

- In both 2015 and 2016, fourteen (14) of the highest paid fifteen (15) Town employees were male-and that group of fourteen included Plaintiff;

- Prior to Plaintiff beginning his employment with the Town, the Town promulgated a policy addressing sexual harassment that applied to "all Town employees and all personnel in a contractual relationship with the Town" (Ex. B);

- Plaintiff acknowledged his receipt of the Town's sexual harassment policy on November 19, 2009 and never made any complaints pursuant to such policy (Exs. B, C, Beattie Aff. ¶14);

- On June 30, 2011, the Town Board appointed Plaintiff to the position of Acting Assessor through December 31, 2011, at a salary of $35,880.00 per year (which constituted a 70.80% increase in his rate of pay)(Ex. D);

- When Plaintiff was appointed Acting Assessor, he filled the vacancy created by a male employee who retired and was paid more than Plaintiff's starting salary based on his tenure with the Town and his prior experience as Assessor (Exs. D, E; Beattie Aff. ¶11-12; Regan Aff. ¶11-12);

- On November 10, 2011, Plaintiff was appointed to the Assessor position at a salary of $37,180.00 per year (which constituted a 3.60% increase in pay)(Ex. E);

- Plaintiff was appointed to a six (6) year term as Town Assessor commencing on January 1, 2012 (Regan Aff, ¶9);

- Plaintiff worked for the Town in the Assessor position from November 10, 2011 until he voluntarily resigned on April 10, 2017, before the expiration of his six-year term (Ex. F);

- During the Town's 2016 negotiation with the Teamsters, there was discussion about including the Assessor and Code Enforcement Officer positions in the Teamsters unit, but, the Town

was advised by the Teamsters that Plaintiff requested not to become a member of the union and therefore, the Assessor position remained outside the bargaining unit in 2017 (Exs. J, K);

- On December 14, 2015, Plaintiff filed an administrative charge with the New York State Division on Human Rights ("SDHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination on the basis of Plaintiff's gender (Dkt. No. 1; Ex. Q);

- Following its investigation into Plaintiff's complaint and issuing a determination of "no probable cause," the SDHR found as follows:

  - It is undisputed that as the only Assessor, there are no other comparably situated Town employees, male or female, to Plaintiff;

  - Plaintiff was the only person in his position, and has no similarly situated female with whom to compare himself;

  - Plaintiff's conclusions do not demonstrate wage discrimination based on sex, for several reasons. First, [Plaintiff] completely disregards the circumstances surrounding each new hire, including their membership in the collective bargaining unit, the length of their employment with the Town, their experience, and perceived value as employees....The investigation revealed no evidence [Plaintiff's] sex had anything to do with his starting salary being less than his female predecessor... and in fact revealed that over the course of his employment, [Plaintiff] has received steady pay increases that now bring him on par with his predecessor's ending salary;

4

- No other Town employee, male or female, receives the Health Insurance benefit received by Peggy Brusso; therefore, there is no indication that the grant of this exemption was due to Ms. Brusso's sex;

- The SDHR investigation did not reveal any evidence that [Plaintiff] suffered harassment as a result of his sex, and/or that he suffered retaliation as a result of engaging in protected activity.  Much of the evidence Plaintiff presented of alleged harassment is time-barred, by his own admission, having occurred in September 2014. Moreover, Complainant admits that the alleged harassment was not based on his sex, but rather on a long-running personal and professional dispute between himself and Ms. Brusso;

- [Plaintiff] admits he never actually filed a harassment claim against any Town employee, and that his salary has increased, rather than decreased during the course of his employment.

- On September 7, 2016, the EEOC "adopted the findings of the SDHR and provided Plaintiff with notice of his suit rights and Plaintiff commenced this action advancing some of the very same allegations he presented to the EEOC and the SDHR (*Id.*);

Plaintiff gave sworn testimony in this action during his deposition on September 27, 2017 (Ex. M). During Plaintiff's deposition, he testified as follows:

- As distinguished from other Town employees Plaintiff seeks to compare himself to, Plaintiff's highest level of education was "some college" without obtaining a degree (Ex. M at 30-34);

- Plaintiff began his employment with the Town in 2009 as *Data Collector*, a position he held until July 2011 when he was "asked to be the Town Assessor" (*Id.* at 38);

- Plaintiff assumed the Town Assessor position that was previously held by a male, Kim Bissonette - who Plaintiff knows had prior experience as an Assessor - while Plaintiff had no prior experience as an Assessor (*Id.* at 39, 55-57);

- Plaintiff admitted that he obtained yearly raises while working as Town Assessor, having had started with an approximate salary of $35,000 in 2011 and made "a little shy of $45,000" when he resigned in April 2017 (*Id.* at 60-61);

- Plaintiff confirmed that his yearly raises while working at the Town were between 3.6 to 7.4 percent which he negotiated directly with the Town Supervisor and Town Board (*Id.*at.60-61, 64-65);

- Plaintiff admitted that while he was working at the Town or serving as the Town Assessor, there was only one (1) Town Assessor position (*Id.* at 67-68);

- Plaintiff admitted that he was never represented by the labor union when serving as Town Assessor (*Id.* at 68);

- Plaintiff testified that one the bases for what he perceived as unfair treatment was the fact that the male who replaced him as Town Assessor in 2017 was hired at a rate that was $5,000 more than Plaintiff made when he was first appointed in 2011 (Ex. M at 89-90);

- Plaintiff testified that in 2016 he learned of the health insurance benefit which Peggy Brusso received in 2011 pursuant to a union-negotiated memorandum of agreement (*Id.* at 112-13, 115) ;

- Plaintiff admits that he was aware that, unlike him, Peggy Brusso: began her Town employment before Plaintiff was hired, initially held two part-time positions; was a member of the Teamsters union; was paid less than Plaintiff was;

- Plaintiff voluntarily resigned his position as Town Assessor in April 2017 before completing his six year term (*Id.* at 39).

As discussed below, Plaintiff's admissions, the undisputed record evidence and the well-settled law compel dismissal of Plaintiff's *pro se* Complaint in this action.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); accord *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). It is well-settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999). Initially, the moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "A `genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party," *Dister v. Cont'l Group*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted); *Matlock-Abdullah v. New York State Dep't. Of Labor, 2017 U.S. Dist.,* LEXIS 195763 ** 20-21 (N.D.N.Y. 2017). Moreover, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). As for the materiality requirement, a dispute of fact is "material" if it

"might affect the outcome of the suit under the governing law… Factual disputes that are irrelevant or unnecessary will not be counted." *Matlock*, at *20; *quoting in part Anderson*, 477 U.S. at 248.

"While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence," *Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 515 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 56(e)). Moreover, once the movant informs the Court of the basis for the motion and identifies those portions of the record that demonstrates the absence of triable questions of fact, "the movant must come forward with specific facts showing a genuine issue of material fact for trial." *Matlock*, at 21. As demonstrated herein, the Town has met its burden by identifying the absence of material questions of fact and Plaintiff cannot carry his burden of proof. Accordingly, his Complaint must be dismissed.

## ARGUMENT

As the record before this Court demonstrates, this action is a misguided attempt by Plaintiff to express his frustrations with his former employer (the Town) that stem from his subjective perception that he should have been paid more by the Town or treated better by the Teamsters Union. Unfortunately for Plaintiff, his only legal recourse was to do exactly what he did in April 2017: resign from the Town and exercise his right to pursue other opportunities with other employers. Plaintiff's attempt to fashion a gender discrimination theory under Title VII before this Court is not based upon any evidence, facts or the law - but merely an attempt to squeeze a "round peg in a square hole". In short, the discovery process in this action exposed Plaintiff's gender discrimination theory to be completely baseless and further reveled that even Plaintiff himself does not believe the unfairness he perceived as a Town employee was the product of unlawful gender discrimination.

## POINT I

### SOME OR ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's Title VII claim is governed by a 300 day statute of limitations period. *42 U.S.C. § 2000e-5(e)(1)*; *Whitt v. Kaleida Health,* 2018 U.S. Dist. LEXIS 59974 **30-31 (W.D.N.Y. 2018).  In the present case, Plaintiff filed his administrative Charge (jointly) with the EEOC (and the SDHR) on December 14, 2015 (Exs. L, Q; Dkt. No. 1 at 4).  Accordingly, the "look back period" defining the scope of any Title VII claim only goes back to February 18, 2015. Stated another way, any alleged actions that occurred prior to February 18, 2015 fall outside the applicable statute of limitations and cannot support a Title VII claim before this Court. *See Brooking v. New York Department of Taxation & Fin.,* 2016 U.S. Dist. LEXIS 86457 **20-21(N.D.N.Y. 2016).

Plaintiff's Complaint before this Court includes mostly allegations that fall outside the applicable statute of limitations period (i.e., before February 18, 2015). For example, Plaintiff's Complaint (Dkt. No.1) includes the following paragraphs which contain time-barred allegations: ¶ 3 referring to a Town hiring decision in November 2009, ¶ 4 referring to a Town action taken in January 2010; ¶ 5 referring to a Town hiring decision on July 1, 2011; ¶ 6 referring to alleged actions by the Town during the Spring of 2013; ¶ 7 referring to an alleged hiring action by the Town on October 21, 2013; and  ¶ 8 referring to interactions Plaintiff alleged he had with the former Town Supervisor on September 18,  2014 (Dkt. No. 1 pp. 8-11).  Thus, the only factual allegations contained in Complaint before this Court which are not clearly time-barred (i.e., occurring after February 18, 2015), are those allegations contained in the last three paragraphs (¶¶ 9-11) of the Complaint (Dkt. No. 1 pp. 11-12). As discussed below, the allegations contained in these three paragraphs fail to state a cognizable Title VII claim.

To the extent Plaintiff's Complaint (Dkt. No. 1) advances allegations of "harassment" or "retaliation," it is clear that all such claims are time-barred. Stated another way, the only claims or allegations contained in the Complaint which are not time-barred (Dkt. No. 1 ¶¶ 9-11) at most, advance a pay disparity claim based on alleged gender discrimination.

## POINT II

### SOME OR ALL OF PLAINTIFF'S CLAIMS ARE PRECLUDED BY HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

It is well-settled that before commencing an action in this Court, Plaintiff was required to first exhaust his administrative remedies by filing with the EEOC and/or the SDHR. *Milner v. HRA Police Department/Agency*, 2018 U.S. Dist. LEXIS 52138 (S.D.N.Y 2018); *Harris v. New York State Dep't. of Taxation,* 2015 U.S. Dist. LEXIS 49900 *13 (N.D.N.Y. 2015); *Patroso v. Syracuse Cmty. Health Ctr.*, 2014 U.S. Dist. LEXIS 111922 *20 (N.D.N.Y. 2014). As discussed above (Point I) to the extent Plaintiff's Complaint in this action advances claims of harassment or retaliation (e.g., Dkt. No. 1 at 9-10), such allegations are clearly time-barred as previously noted by the SDHR (Ex. L).

The remaining factual allegations in Plaintiff's Complaint related to alleged incidents and decisions that occurred in January 2016 (Dkt. No. 1 ¶¶9 -11) – undisputedly occurred *after* Plaintiff filed his only EEOC charge on December 14, 2015 (Ex. Q). Thus as a matter of simple logic, the alleged January 2016 Town actions/decisions were never presented to, or investigated by, the EEOC.

Moreover, with the possible exception of the Peggy Brusso health insurance allegation (Dkt. 1 ¶11), the remaining January 2016 allegations Plaintiff included in his Complaint before this Court are not "reasonably related" to the claims and allegations Plaintiff filed with the EEOC. *Pedroso v. Syracuse Cnty. Health Ctr.,* 2014 U.S. Dist. LEXIS 111922 *21 (N.D.N.Y. 2014)

10

[dismissing a *pro se* Title VII Plaintiff's complaint at the summary judgment stage for advancing claims not filed with the EEOC]. Rather, as to the few allegations that not plainly time-barred, Plaintiff appears to have changed his theory from: (a) the alleged gender disparity between the starting pay rates of six unidentified Town employees (as compared to their predecessors) –which Plaintiff presented to the EEOC (Ex. Q at 8); to (b) the treatment of the Court Clerk and Code Enforcement Officer's salaries as of January 2016 (Dkt. No. 1 at 11) – which is alleged in Plaintiff's complaint before this Court. Accordingly, these claims and allegations which are not clearly time-barred should nevertheless be dismissed based upon Plaintiff's failure to satisfy the condition precedent required by Title VII.

## POINT III

### PLAINTIFF ADMITS THAT HIS "HARASSMENT" CLAIM IS NOT COGNIZABLE UNDER TITLE VII

The timely factual allegations contained in Plaintiff's Complaint[1] fail to state a claim for unlawful harassment under Title VII.  As Federal Courts have made clear over the past three decades since the U.S. Supreme Court fashioned the hostile work environment framework, such claims of unlawful harassment can only be maintained by allegations of behavior that meets the objective standard of severe and/or pervasive behavior that is trait-based. *Matlook-Abdullah v. New York State Dep't of Labor*, 2017 U.S. Dist. LEXIS 195763 ** 35-36 (N.D.N.Y. 2017), *citing Little John v. City of N.Y.*, 795 F. 3d 297, 320-21 (2d cit. 2015).

Not only has Plaintiff failed to include allegations that satisfy, or even approach, the objective test of severe and pervasive, Plaintiff has failed to allege even a single incident of gender or sex-based harassment (Dkt. No. 1). There are no harassment allegations contained in Plaintiff's

---

[1] In fact, all of Plaintiff's Complaint allegations considered in their totality fail to state a cognizable claim of unlawful harassment.

EEOC charge (Ex. Q) and Plaintiff's verified administrative charge clearly indicated that the "harassment" he was referring to in his allegations was "*other than* sexual harassment" (Ex. Q at 6)(*emphasis supplied*). Moreover, the only reference to "harassment" in his Complaint before this Court is the September 2014 dispute between Plaintiff and a female Town employee (Peggy Brusso) - which ironically arose out of the news concerning one of Plaintiff's substantial pay increases by the Town.

Moreover, Plaintiff admits that his September 2014 disputes with Ms. Brusso had nothing to do with his gender or sex, but what he described as general "harassment" (Ex. M at 127, 131). Of course, it is axiomatic that there exists no federal cause of action for generic workplace harassment (motivated by ones residency, pay increase, interpersonal jealousy etc.); *see, Matlock* at 36 (noting that only trait-based harassment is actionable); *see, Lichtenstein v. Triarc Cos.*, 2004 U.S. Dist. LEXIS 8610 ** 26-27 (S.D.N.Y. 2004)(same). Specifically, Plaintiff offered the following sworn testimony during his deposition:

> Q:   *So you were looking to file a sexual harassment against Peggy Brusso?*
>
> A:    *It wasn't anything sexual about it.*
>
> Q:   *Okay.*
>
> A:   *It's just harassment. It's not a sexual harassment* (Ex. M at 127).
>
> Q:   *Were you claiming it wasn't a sexual harassment issue, it was a personal issue between you and Peggy Brusso?*
>
> A:   *Yes, it was not sexual* (Ex. M at 131).

Courts in this Circuit have consistently held that in the absence of sex-based motive, unfair treatment or "generic harassment" is simply not actionable under Title VII as a matter of law. *Camarda v. Selover,* 673 Fed. Appx. 26, 29 (2d Cir. 2016) (Summary Order), *citing in part McPherson v. New York City Dep't. Of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006).

12

Moreover, even assuming *arguendo* that Plaintiff's "harassment allegation" was timely, could satisfy the objective standard or was actually "trait-based"; any hostile work environment claim would be precluded by the undisputed fact that Plaintiff unreasonably failed to use the Town's comprehensive EEO policy and complaint procedure (Exs. B, C; Beattie Aff. ¶14; Regan Aff. ¶8). As the Supreme Court defined what has now come to commonly referred to as the "*Farragher* defense", when an employer such as the Town exercises care to prevent and correct unlawful harassment, and an employee such as Plaintiff fails to avail himself of such remedial options, the employer is not liable under Title VII. *Alexander v. Westbury UFSD,* 829 F.Supp. 2d 89 (E.D.N.Y. 2011), *citing and applying Farragher v City of Boca Raton*, 524 U.S. 775 (1998). The undisputed record evidence before this Court demonstrates that the Town had a comprehensive policy and complaint procedure in place, which Plaintiff was aware of, but chose not to utilize. Thus any timely Title VII harassment claim would also be doomed under the Supreme Court's ruling in *Farragher*.

## POINT IV

### PLAINTIFF'S DISCRIMINATION (DISPARATE TREATMENT) CLAIM(S) IS BASELESS

Plaintiff has not, and cannot, make out a *prima facie* claim of disparate treatment (based on pay disparity) under Title VII. On its face, Plaintiff's Complaint appears to advance a "reverse discrimination" claim asserting that his pay rate as a male employee of the Town was the product of gender discrimination based upon his curious comparisons to select female employees of the Town.

Pay disparity claims under Title VII, are, like other disparate treatment claims, governed by the *McDonnell Douglas* burden shifting framework. *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir. 2001). Title VII Plaintiffs advancing a pay disparity claim must first establish a *prima*

*facie* case by presenting evidence that they are "… a member of a protected class; [they were] qualified for the job in question; [they were] paid less than members outside of the protected class for the same work; and the employer's decision to pay the plaintiff less occurred under circumstances that give rise to an inference of discrimination." *Bentivegna v. People's United Bank,* 2017 U.S. Dist. LEXIS 124319 *49 (E.D.N.Y. 2017), *citing Belfi,* 191 F.3d at 139-40. As the record before this Court makes clear, with the exception of the second element (i.e., that he was qualified for the position of Assessor). Plaintiff cannot satisfy any of the three elements required to make a *prima facie* showing.

As to the first element, because it is undisputed that Plaintiff is male precludes a finding that he is a member of a protected class. As discussed below, the undisputed fact that Plaintiff was the one and only Assessor for the Town during the relevant time period, and was preceded and succeeded by Assessors who were also male, he cannot show that he was paid less than members outside his protected class that performed the same work for the Town.

Finally, Plaintiff cannot offer any evidence to satisfy the fourth required element of his *prima facie* case; the decision regarding Plaintiff's pay adjustments occurred under circumstances that give rise to an inference of gender-based discrimination (i.e., anti-male animus). As to this fourth required element, the District Court in *Whitt* recently noted:

> With respect to the fourth element, "in order to evade summary judgment, plaintiff must produce evidence sufficient to convince a reasonable trier of fact that [his] employer acted with discriminatory animus". *McCullough,* 224 F.Supp. 3d at 199.... Moreover, on the fourth element, the plaintiff "at all times bears the ultimate burden of proof." *Belfi,* 191 F.3d at 140.

*Whitt v. Kaleida Health*, 2018 U.S. Dist. LEXIS 59974 **40-41 (W.D.N.Y. 2018) [holding that Plaintiff's reliance on the fact that employees outside the protected class was insufficient to support an inference of discriminatory intent]; *see also Bentivegna v. People's United Bank,* 2017 U.S.

Dist. LEXIS 124319 *49-51 (E.D.N.Y. 2017) [to survive summary judgment a Plaintiff must evidence that his employer's decisions were actually motivated by gender discrimination]; *King v. James,* 2016 U.S. Dist. LEXIS 161308 **46-47 (W.D.N.Y. 2016) [unlike EPA claims, Title XII requires proof of intent].

As a matter of law, Plaintiff has not, and cannot, establish the fourth element of his *prima facie* Title VII claim by simply pointing to alleged disparities in the percentage pay adjustments of select female Town employees who are not in fact comparators. The high standard for evaluating "comparators" in Title VII pay disparity claims, is well-settled. As the Court of Appeals for the Second Circuit held in *Byrne v. Telesector Res. Group, Inc.,* 339 Fed. Appx. 13 (2d Cir. 2009)(Summary Order): "[f]or purposes of an equal pay claim, however, a plaintiff must show more than identical job titles; a finding of substantial equality must be based on actual job content." *Id.,* at p. 16, *citing: Marshall v. Bldg. Maint. Corp.,*587 F.2d 567, 571 (2d Cir. 1978). The Court in *Byrne* affirmed the dismissal of a Title VII plaintiff's claim based on the failure to demonstrate that she performed substantially equal work to her comparators and failed to offer *"evidence detailing the job duties of the two male comparators to show that their positions were substantially equal to her own". Id.* The Court of Appeals in *Byrne* confirmed that such a Title VII Plaintiff fails to raise a triable question of fact sufficient to survive summary judgment when she fails to present evidence that the comparators' positions were substantially equal in skill, effort, and responsibility. *Id.* In the present case, Plaintiff has not, and cannot, offer evidence that any of his "would-be comparators" are actual comparators (i.e., did the work of an Assessor) for the purposes of supporting his Title VII pay disparity claim.

The undisputed record before this Court demonstrates that Plaintiff's Title VII pay disparity claim is not only legally and analytically flawed, but factually baseless. As an initial

matter, Plaintiff's attempt to fashion a Title VII pay disparity claim by virtue of his comparisons to the three employees/ positions referred to in his compliant is illegal and fundamentally flawed for *inter alia* the following reasons:

- Plaintiff directly negotiated his pay and compensation with the Town each year and thus Plaintiff was in part, the "architect" of his compensation benefit package;

- Plaintiff's position of Assessor is unique and no other Town employee performed the same work;

- The Town's Court Clerk, Deputy Court Clerk and CEO did not perform the same work as Plaintiff and the Town employees working in these titles were not "similarly situated";

- Unlike Plaintiff, the Town Court Clerk and the Court Clerk were represented by the Teamsters union and their compensation and benefits were prescribed by a collective bargaining agreement.

Not only is Plaintiff unable to offer evidence of discriminating intent, his Title VII theory is factually flawed by the fact that he cannot show actual pay disparities between similarly-situated female Town employees. As an initial matter, it must be noted that the Courts in this Circuit have consistently held that merely pointing to disparities in pay or benefits between Plaintiff and members of another group or class, is not sufficient, as a matter of law, to sustain a Title VII claim. *McCullough v. Xerox Corp.,* 224 F. Supp. 3d 193, 199 (W.D.N.Y. 2016)["claims of disparities in pay, without more, are insufficient to demonstrate discriminating animus….."] *Joseph v. Owens & Minor Distrib,* 5F. sup .3d 295, 312 (E.D.N.Y. 2014); *McNutt v. Nasca,* 2013 U.S. Dist. LEXIS 7059 **39-40 (N.D.N.Y. 2013)[…"there must be evidence that decisions made in regard to plaintiff's compensation were made because of plaintiff's sex"]. Beyond Plaintiff's inability to

offer the necessary proof to support his Title XII gender claim, the undisputed evidence before this Court demonstrates that anti-male animus played no role in Plaintiff's compensation or benefits.

As the record evidence demonstrates, with the exception of the Town Clerk (who Plaintiff does not identify as a comparator), Plaintiff was paid more by the Town than *every female Town employee* in both 2015 and 2016 (Ex. R). During those same years, fourteen (14) of the highest paid fifteen (15) Town employees were, like Plaintiff, male (Ex. R). Even assuming *arguendo*, that Plaintiff could make a *prima facie* showing, the Town has clearly and consistently explained the manner in which the compensation levels for Plaintiff and other Town employees are set and the various legitimate, non-discriminating factors that are considered (Beattie Aff. ¶¶8-10; Regan Aff. ¶¶5-6; Goliber Aff.¶¶ 6-10). Finally the undisputed circumstances surrounding the compensation paid to the three male Assessors (including Plaintiff, his predecessor and his successor) demonstrates that the Town based compensation decisions upon legitimate non-discriminatory factors such as relevant experience and duration of Town service (Exs. D, F, I; Beattie Aff. ¶¶11-12; Regan Aff. ¶¶11-12).

Since Plaintiff cannot establish a *prima facie* Title XII cause or carry his burden of supporting such claim with evidence of gender discrimination, his Title XII claim must be dismissed.

## POINT V

## PLAINTIFF'S RETALIATION CLAIM IS TIME-BARRED AND BASELESS

To the extent Plaintiff's complaint is read to advance a federal claim of unlawful retaliation under Title VII (the only substantive federal statute implicated by Plaintiff's Complaint), such allegations are premised on Plaintiff's perspective of a 2009 incident he read about in a local newspaper and the Town's alleged 2014 response to his 2014 dispute with fellow Town employee

17

Peggy Russo, who became frustrated at Plaintiff's large pay increase and wrote a note to her female coworker expressing her frustration. (Dkt. No. 1 at 10-11; Ex. M at 127, 131; Regan Aff. ¶¶7-9; Brusso Aff. ¶¶8-9). As an initial matter, as discussed above any such claim is clearly time-barred under Title VII.

Even assuming *arguendo*, Plaintiff's retaliation allegation as not time-barred, such claim is fatally flawed as Plaintiff cannot establish any of the elements necessary to sustain a Title VII retaliation claim.  To establish a *prima facie* case of retaliation under Title VII a "plaintiff must submit sufficient admissible evidence to allow a trier of fact to find: (i) conduct by plaintiff that is protected activity under Title VII; (ii) of which the employer is aware; (iii) followed by an adverse employment action of nature that would deter a reasonable employee from making or supporting a discrimination claim; (iv) that was causally connected to the protected activity." *Forest v. N.Y. State Office of Mental Health,* 672 Fed Appx. 42, 43 (2d Cir. 2016)*; quoting Cox v. Onondoga Cty. Sheriff's Dep't.* , 760 F.3d 139, 145 (2d Cir. 2014). Neither the allegations contained in Plaintiff's complaint nor the evidence before this Court establish any of the required elements for a Title VII retaliation claim.

First, as the undisputed record evidence before this Court makes clear Plaintiff's retaliation theory is premised upon the Towns' alleged response to his 2014 "generic harassment" complaint about the tensions between Plaintiff and Peggy Brusso who responded to the 2014 pay increase which Plaintiff received. As a matter of law that alleged incident, does not constitute protected activity for the purposes of Title VII.  *Rumsey v. Northeast Health, Inc.,* 89 F.Supp.3d 316, 333 (N.D.N.Y. 2015); *see also, Cobb v. Atria Senior Living, Inc.,* 2018 U.S. Dist. LEXIS 13725 *11 (Dist. Conn. 2018). As Plaintiff admitted in his testimony, that incident had nothing to do with gender or sex (Ex. M at 127, 131).

Second, the undisputed evidence before this Court demonstrates that, despite the complaint procedure available to Plaintiff, he never filed any formal complaint of discrimination and his reports to the Town Supervisor in 2014 were merely understood as an interpersonal conflict between two employees over pay and Plaintiff's activities as Assessor (Beattie Aff. ¶14; Regan Aff. ¶8). Thus, the Town was never made aware of any protective activity under Title VII.

Moreover, as a matter of law, Plaintiff cannot establish that he was subjected to any materially adverse employment action by the Town following his 2014 dispute with Ms. Brusso. As an initial matter, Plaintiff's Complaint before this Court does not include a single allegation of an adverse employment action after September 2014 (Dkt. No. 1). According to the Supreme Court, an employment action is "materially adverse" if it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). According to *Burlington Northern*, in determining whether a materially adverse action has occurred, courts must apply an objective standard and examine "the circumstances of the particular case." *Id.* Furthermore, "it is important to separate significant from trivial harms." *Id.* "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices…unique to a particular situation," *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006); *see also, Forest v. N.Y. State Office of Mental Health,* 672 Fed Appx. at p. 44. The complete absence of allegations or evidence of any adverse employment action by the Town further requires dismissal of any claim of retaliation.

Finally, Plaintiff has not alleged and cannot offer evidence of any materially adverse employment action by the Town that was causally connected to Plaintiff's alleged 2014 concerns.

In fact, while it is not the Town's burden to "disprove" Plaintiff's retaliation hypothesis, it is noteworthy that the undisputed evidence before this Court demonstrates that Plaintiff received higher annual pay increase than most Town employees and continued to make more money than Ms. Brusso who he had conflicts with in 2014. Accordingly, any Title VII retaliation claim that could be gleaned from Plaintiff's Complaint before this Court must be dismissed.

## POINT VI

### PLAINTIFF HAS NOT, AND CANNOT, STATE A BREACH OF CONTRACT CLAIM

Plaintiff's Complaint makes reference to a contract that fails to include any of the basic factual allegations required under New York State law to state a cause of action for breach of contract. Plaintiff has failed to state a cognizable breach of contract claim and any such claim would nonetheless be barred by state law. Plaintiff's allegations supporting a breach of contract by the Town consists of the following: *"Since 2011 ... the Potsdam Town Board have breached the agreement that the plaintiff shall receive the same benefits as everyone else, with the exception of longevity"*. (Dkt. No. 1 at 13) Plaintiff's Complaint before this Court does not attach any contract or agreement nor does it identify any other terms of any agreement (e.g., the date of the date of the agreement, the terms of the agreement). Under New York Law, Plaintiff has clearly failed to sufficiently allege a breach of contract claim. *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC,* 83 A.D. 3d 804, 806 (2d Dept. 2011) [a breach of contract claim requires a showing of (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages]; *see also, Chen v. Antel Communs, LLC,* 2015 U.S. Dist. LEXIS 134861 (E.D.N.Y. 2015).

Even assuming arguendo, Plaintiff sufficiently alleged the existence of an enforceable contract with the Town or the required elements of breach (which he clearly has failed to do), any

20

such claim would be barred by New York's statute of fraud. Specifically, New York states: *"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith… if such agreement, promise or undertaking…[b]y its terms is not to be performed within one year from the making thereof…"* N.Y. Gen. Oblig. L. § 5-701(a) and (a)(1). While the allegations contained in Plaintiff's Complaint fail to identify when his alleged contract was established or the duration of such contract, the law defining the position of Town Assessor, makes clear that the term of such an Assessor is six (6) years. As New York's Real Property Tax Law ("NY RPTL") states "Each local government to which this title applies which has the power to assess real property for purposes of taxation shall have one assessor…" N.Y. RPTL § 310(1). The statute further provides: "The term of office of assessor shall be six years…" N.Y. RPTL § 310(2). Accordingly, even assuming *arguendo* there existed an agreement between Plaintiff and the Town which accompanied his statutory appointment to the Assessor position (which has not been alleged), any such agreement could not be performed within one year. Thus, any such unwritten agreement would be barred by New York's statue of frauds.

Finally, any breach of contract claim against the Town would be precluded by Plaintiff's failure to timely file a verified Notice of Claim upon the Town. (Dkt. No. 1; Johnson Decl. ¶12). New York's Town Law states: "…no action shall be maintained against a town upon or arising out of a contract entered into by the town unless the same shall be commenced within eighteen months after the cause of action thereof shall have accrued, nor unless a written verified claim shall have been filed with the town clerk within six months after the cause of action shall have accrued…" N.Y. Town Law § 65(3). Moreover, Town Law Section 65 does not provide Courts with the authority to extend the time for filing a Notice of Claim. *County of Rockland v.*

*Orangetown*, 189 A.D. 2d 1058, 1059-60 (3d Dept. 1993) It is well-settled that "The filing of a notice of claim is thus a condition precedent to the maintenance of an action against a town arising out of the contractual relationship between a plaintiff and a town" *McCulloch v Town of Milan*, 74 AD3d at 1035; *see Mohl v Town of Riverhead*, 62 A.D.3d 969, 969, 880 NYS2d 313 [2009]; *ADC Contr. & Constr., Inc. v Town of Southampton*, 45 A.D.3d 614, 615, 850 NYS2d 121 [2007]). *McCulloch v. Town of Milan Town Bd.*, 92 A.D.3d 734 (N.Y. App. Div. 2012). Thus, any breach of contract claim read into Plaintiff's complaint must be dismissed as a matter of law.

## CONCLUSION

WHEREFORE, the Town of Potsdam respectfully requests that its Motion for Summary Judgment be granted and Plaintiff's Complaint herein be dismissed in its entirety, and for such other and further relief in favor of the Town as to this Court may deem just and proper.

DATED:    April 30, 2018

Respectfully submitted,

LEMIRE, JOHNSON & HIGGINS, LLC

s/  Gregg T. Johnson

_____

Gregg T. Johnson (506443)